TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

SRISUWAN TANGTIWATANAPAIBUL
        a/k/a Anne Tangtiwatanapaibul;
PHOUVIENGSONE SYSOUVONG,
        a/k/a Tukta Phouviengsone;
*on behalf of themselves and others similarly situated*
                                        Plaintiffs,

                        v.

TOM & TOON INC
        d/b/a Broadway Thai;
THAI SLIDERS & CO. LLC
        d/b/a Thai Slider;
TOON THAI INC
        d/b/a Noodle Den;
SILOM THAI INC
        d/b/a Silom Thai;
THAI TOON AT GRAND CENTRAL, INC.
        d/b/a Thai Toon;
WAI YING LAU,
TOON LAU, and
PETER FONG CHIU,
                                        Defendants.
-------------------------------------------------------------x

**Case No: 17-cv-00816**


**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**F.R.C.P. 23  CLASS ACTION**

**COMPLAINT**


        Plaintiffs SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul;

PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone, (hereafter referred to as

"Plaintiffs"), on behalf of themselves and other similarly situated, by and through their attorneys,

Troy Law, PLLC, hereby bring this complaint against Defendants TOM & TOON INC d/b/a

Broadway Thai; THAI SLIDERS & CO. LLC d/b/a Thai Slider; TOON THAI INC d/b/a Noodle

Den; SILOM THAI INC d/b/a Silom Thai; and THAI TOON AT GRAND CENTRAL, INC.

d/b/a Thai Toon; WAI YING LAU, TOON LAU, and PETER FONG CHIU, and allege as follows:

## INTRODUCTION

1. This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including Plaintiffs, at least the hourly minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3. Defendants refused to record all of the time that Plaintiffs and similarly situated employed by Corporate Defendants work or worked, including work done in excess of forty hours each week.

4. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

5. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants:  (1) unpaid minimum wage compensation, (2) unpaid overtime wage

compensation, (3) up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

6.  This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

7.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

8.  Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul ("TANGTIWATANAPAIBUL") was employed by TOM & TOON INC d/b/a Broadway Thai; WAI YING LAU, TOON LAU, and PETER FONG CHIU as a waitress and cashier.

9.  Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone

("SYSOUVONG") was employed by TOM & TOON INC d/b/a Broadway Thai; THAI

TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon; WAI YING LAU, TOON LAU,

and PETER FONG CHIU as a cook.

## **DEFENDANTS**

*Corporate Defendants*

10. Defendant TOM & TOON INC d/b/a Broadway Thai is a domestic business corporation

organized under the laws of the State of New York with a principal address at 245 West 51st

Street, New York, NY 10019.

11. TOM & TOON INC d/b/a Broadway Thai is a business engaged in interstate commerce that

has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

12. TOM & TOON INC d/b/a Broadway Thai purchased and handled goods moved in interstate

commerce.

13. Defendant THAI SLIDERS & CO. LLC d/b/a Thai Slider is a domestic business corporation

organized under the laws of the State of New York with a principal address at 108 John

Street, New York, NY 10038.

14. THAI SLIDERS & CO. LLC d/b/a Thai Slider is a business engaged in interstate commerce

that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

15. THAI SLIDERS & CO. LLC d/b/a Thai Slider purchased and handled goods moved in

interstate commerce.

16. Defendant TOON THAI INC d/b/a Noodle Den is a domestic business corporation

organized under the laws of the State of New York with a principal address at 435 Park

Avenue South, New York, NY 10016.

17. TOON THAI INC d/b/a Noodle Den is a business engaged in interstate commerce that has

gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

18. TOON THAI INC d/b/a Noodle Den purchased and handled goods moved in interstate commerce.

19. Defendant SILOM THAI INC d/b/a Silom Thai is a domestic business corporation organized under the laws of the State of New York with a principal address at 150 8th Avenue, New York, NY 10011.

20. SILOM THAI INC d/b/a Silom Thai is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

21. SILOM THAI INC d/b/a Silom Thai purchased and handled goods moved in interstate commerce.

22. Defendant THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon is a domestic business corporation organized under the laws of the State of New York with a principal address at 89 East 42nd Street, New York, NY 10017.

23. THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

24. THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon purchased and handled goods moved in interstate commerce.

*Owner/ Operator Defendants*

25. The Individual Defendant is an officer, director, manager, majority shareholder and/or owner of the Corporate Defendants TOM & TOON INC d/b/a Broadway Thai; THAI SLIDERS & CO. LLC d/b/a Thai Slider; TOON THAI INC d/b/a Noodle Den; SILOM THAI INC d/b/a Silom Thai; and THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon.

26. As one of the ten largest shareholders, the officer, director, manager, majority shareholder and/or owner is individually responsible for unpaid wages under the New York Business Corporation Law.

27. Owner/ Operator Defendant WAI YING LAU, known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

28. Upon personal knowledge of Plaintiffs, Owner/ Operator Defendant WAI YING LAU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with TOM & TOON INC d/b/a Broadway Thai; THAI SLIDERS & CO. LLC d/b/a Thai Slider; TOON THAI INC d/b/a Noodle Den; SILOM THAI INC d/b/a Silom Thai; and THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon.

29. WAI YING LAU is the husband of TOON LAU, his wife.

30. Owner/ Operator Defendant TOON LAU, known as "Lady Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

31. TOON LAU would be the one who write down and sign the corporate check to distribute to Defendants' employees every other week.

32. Upon personal knowledge of Plaintiffs, Owner/ Operator Defendant TOON LAU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and

regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with TOM & TOON INC d/b/a Broadway Thai; THAI SLIDERS & CO. LLC d/b/a Thai Slider; TOON THAI INC d/b/a Noodle Den; SILOM THAI INC d/b/a Silom Thai; and THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon.

33. Owner/ Operator Defendant PETER FONG CHU, known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records.

34. Upon personal knowledge of Plaintiffs, Owner/ Operator Defendant PETER FONG CHU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with TOM & TOON INC d/b/a Broadway Thai; THAI SLIDERS & CO. LLC d/b/a Thai Slider; TOON THAI INC d/b/a Noodle Den; SILOM THAI INC d/b/a Silom Thai; and THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon.

35. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## **STATEMENT OF FACTS**

36. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

***Defendants TOM & TOON INC d/b/a Broadway Thai; THAI SLIDERS & CO. LLC d/b/a Thai Slider; TOON THAI INC d/b/a Noodle Den; SILOM THAI INC d/b/a Silom Thai; and THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon; WAI YING LAU, TOON LAU, and PETER FONG CHIU constitute joint employers***

37. Corporate Defendants TOM & TOON INC d/b/a Broadway Thai; THAI SLIDERS & CO. LLC d/b/a Thai Slider; TOON THAI INC d/b/a Noodle Den; SILOM THAI INC d/b/a Silom Thai; and THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon; and Individual Defendants WAI YING LAU, TOON LAU, and PETER FONG CHIU, are joint employers, and further, the Corporate Defendants constitute an enterprise as the term is defined by 29 USC §203(r) insofar as the five restaurants doing business at five locations:

    a.  Share employees among the Corporate Defendants' locations;

    b.  Assign employees to work at one or more locations on a weekly schedule set by Owner/ Operator depending on need, including Plaintiffs;

    c.  Are owned by substantially the same Corporate and Owner Defendants, including husband and wife WAI YING LAU and TOON LAU and their business partner PETER FONG CHIU; and

    d.  Are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co- owned by the same partners.

38. Upon personal knowledge of Plaintiffs, employees at TOM & TOON INC d/b/a Broadway Thai and THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon are given weekly schedules to work at each of the other three restaurant locations at the beginning of the week, even though they are paid in a common paycheck by Owner/ Operator Defendant WAI YING LAU.

*Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul*

39. From on or about March 3, 2014 to December 23, 2016, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked as a waitress and

cashier for TOM & TOON INC d/b/a Broadway Thai at 245 West 51st Street, New York,

NY 10019.

40. At all relevant times, Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne

Tangtiwatanapaibul's regular work schedule ran from 11:00 to 15:00 then from 17:00 to

23:00 for ten (10) hours a day for "whole" days and from 11:00 to 15:00 for four (4) hours a

day for "half" days.

41. From on or about March 3, 2014 to September 2, 2014, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked from

   a. 11:00 to 15:00 then from 17:00 to 23:00 on Tuesdays, Wednesdays and Thursdays

   for ten (10) hours for three (3) days a week for around thirty (30) hours each

   week.

42. From on or about September 3, 2014 to February 2, 2015, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked from

   a. 11:00 to 15:00 then from 17:00 to 23:00 on Monday (whole day) and three (3) other

   whole days, not fixed, for four (4) days a week for around forty (40) hours each

   week.

43. From on or about February 3, 2015 to July 2, 2015, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked from:

   a. 11:00 to 15:00 then from 17:00 to 23:00 for four (4) whole days for around forty

   (40) hours a week;

   b. 11:00 to 15:00 for one (1) half day for four (4) hours a week.

44. From on or about February 3, 2015 to July 2, 2015, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked forty four (44) hours a

week.

45. From on or about July 3, 2015 to October 2, 2015, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked from:

    a. 11:00 to 15:00 then from 17:00 to 23:00 for three (3) whole days for around thirty

      (30) hours a week;

    b. 11:00 to 15:00 for one (1) half day for four (4) hours a week.

46. From on or about July 3, 2015 to October 2, 2015, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked thirty four (34) hours

a week.

47. From on or about October 3, 2015 to May 31, 2016, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked from:

    a. 11:00 to 15:00 then from 17:00 to 23:00 for three (3) whole days for around thirty

      (30) hours a week.

48. From on or about June 1, 2016 to October 10, 2016, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked from:

    a. 11:00 to 15:00 then from 17:00 to 23:00 for two (2) whole days for around twenty

      (20) hours a week

    b. 11:00 to 15:00 then from 17:00 to 20:00 on Thursdays for seven (7) hours.

49. From on or about June 1, 2016 to October 10, 2016, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked for twenty seven (27)

hours each week.

50. From on or about October 11, 2016 to December 23, 2016, Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked from:

    a. 11:00 to 15:00 then from 17:00 to 23:00 for three (3) whole days for around thirty (30) hours a week.

51. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul and similarly situated employees with Time of Hire Notice in English and in Thai (Plaintiff's primary language) reflecting true rates of pay and payday.

52. Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

53. Further, Plaintiff was required to commit part of her work day in non-tipped work.

54. For instance, Plaintiff was required to sweep the restaurant floor, wiping the leather booths with towel, mop the restaurant glass, clean the statue of Thai deities, and was required to do the cashier closing report two (2) times a day during lunch hours and dinner hours.

55. This non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

56. At all relevant times, Defendants knowingly and failed to provide Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul and similarly situated employees with paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in English and in Thai (Plaintiff's primary language), as required by NYLL §195(1).

57. From on or about March 3, 2014 to September 2, 2014, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was paid at a variable

compensation of between around four hundred ninety dollars ($490) and five hundred forty

dollars ($540) every other week in check, with the caveat that at times Defendants were late

on their wage payment and would combine more than two (2) weeks.

58. However, the biweekly check includes around four hundred and twenty dollars ($420) in

customer tips.

59. As a result, Plaintiff was paid around seventy dollars ($70) to one hundred twenty dollars

($120) by Defendants for sixty (60) hours of work, or thirty (30) hours of work each week.

60. This meant Plaintiff was paid well below the minimum wage for each hour worked.

61. From on or about September 3, 2014 to February 2, 2015, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was paid at a variable

compensation of between around six hundred and eighty dollars ($680) seven hundred

twenty ($720) every other week, one (1) week after completion of two (2) weeks of work in

check, with the caveat that at times Defendants were late on their wage payment and would

combine more than two (2) weeks

62. However, the check includes around five hundred and sixty dollars ($560) in customer tips

each week.

63. As a result, Plaintiff was paid around one hundred twenty dollars ($120) to one hundred

sixty dollars ($160) by Defendants for eighty (80) hours of work, or for forty (40) hours of

each work.

64. This meant Plaintiff was paid well below the minimum wage for each hour worked.

65. From on or about February 3, 2015 to July 2, 2015, Plaintiff SRISUWAN

TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was paid at a variable compensation of between around six hundred and eighty dollars ($680) to seven hundred and twenty ($720) every other week, one (1) week after completion of two (2) weeks of work in check, with the caveat that at times Defendants were late on their wage payment and would combine more than two (2) weeks.

66. However, the check includes around five hundred sixty dollars ($560) in customer tips each week.

67. As a result, Plaintiff was paid around one hundred twenty dollars ($120) to one hundred sixty dollars ($160) by Defendants for eighty eight (88) hours of work.

68. From on or about July 3, 2015 to October 2, 2015, Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was paid at a variable compensation of between around four hundred ninety dollars ($490) and five hundred forty dollars ($540) every other week, one (1) week after completion of two (2) weeks of work in check, with the caveat that at times Defendants were late on their wage payment and would combine more than two (2) weeks.

69. However, the check includes around four hundred twenty dollars ($420) in customer tips each week.

70. As a result, Plaintiff was paid around seventy dollars ($70) to one hundred twenty dollars ($120) by Defendants for sixty eight (68) hours of work, or thirty four (34) hours of work each week.

71. This meant Plaintiff was paid well below the minimum wage for each hour worked.

72. From on or about October 3, 2015 to May 31, 2016, Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was paid at a variable

compensation of between around four hundred ninety dollars ($490) and five hundred forty dollars ($540) every other week in check, one (1) week after completion of two (2) weeks of work in check, with the caveat that at times Defendants were late on their wage payment and would combine more than two (2) weeks.

73. However, the check includes around four hundred twenty dollars ($420) in customer tips each week.

74. As a result, Plaintiff was paid around seventy ($70) to one hundred twenty dollars ($120) by Defendants for sixty (60) hours of work, or thirty (30) hours of work per week.

75. From on or about June 1, 2016 to October 10, 2016, Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was paid at a variable compensation of between around four hundred ninety dollars ($490) and five hundred forty dollars ($540) every other week in check, one (1) week after completion of two (2) weeks of work in check, with the caveat that at times Defendants were late on their wage payment and would combine more than two (2) weeks.

76. However, the check includes around four hundred twenty dollars dollars ($420) in customer tips each week.

77. As a result, Plaintiff was paid around seventy dollars ($70) to one hundred sixty dollars ($160) for forty (40) hours of work, or twenty (20) hours of work each week.

78. This meant Plaintiff was paid well below the minimum wage for each hour worked.

79. From on or about October 11, 2016 to December 23, 2016, Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was paid at a variable compensation of between around four hundred ninety dollars ($490) and five hundred forty dollars ($540) every other week in check, one (1) week after completion of two (2) weeks of

work in check, with the caveat that at times Defendants were late on their wage payment and would combine more than two (2) weeks.

80. However, the check includes around four hundred twenty ($420) in customer tips each week.

81. As a result, Plaintiff was paid around seventy dollars ($70) to one hundred twenty dollars ($120) by Defendants for sixty (60) hours of work, or thirty (30) hours of work each week.

82. At all relevant times, Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul was not paid spread-of-hours for all days in which she worked over ten (10) hours in a workday.

83. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff SRISUWAN TANGTIWATANAPAIBUL a/k/a Anne Tangtiwatanapaibul worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

84. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

*Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone*

85. From on or about June 5, 2012 to September 4, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone worked as a cook for TOM & TOON INC d/b/a Broadway Thai at 245 West 51st Street, New York, NY 10019 and for THAI TOON AT GRAND CENTRAL, INC. d/b/a Thai Toon, located at 89 East 42nd Street, New York, NY 10017.

86. From on or about June 5, 2012 to December 31, 2013, Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone 's regular work schedule ran:

a. From around 10:00 to 23:00 for thirteen (13) hours from Sundays through

Thursdays for five (5) days for sixty five (65) hours a week;

b. From around 10:00 to 24:00 for fourteen (14) hours from Friday through Saturdays

for two (2) days for twenty eight (28) hours a week.

87. From on or about June 5, 2012 to December 31, 2013, Plaintiff on average worked ninety

three (93) hours a week.

88. From on or about January 1, 2014 to September 4, 2014, Plaintiff PHOUVIENGSONE

SYSOUVONG, a/k/a Tukta Phouviengsone 's regular work schedule ran:

a. From around 10:00 to 23:00 for thirteen (13) hours from Sundays through

Thursdays for five (5) days for sixty five (65) hours a week;

b. From around 10:00 to 24:00 for fourteen (14) hours on Fridays for fourteen (14)

hours a week;

c. From around 15:00 to 24:00 for nine (9) hours on Saturdays for nine (9) hours a

week.

89. From on or about January 1, 2014 to September 4, 2014, Plaintiff PHOUVIENGSONE

SYSOUVONG, a/k/a Tukta Phouviengsone on average worked ninety three (93) hours a

week.

90. At all relevant times, while Defendant restaurants were closed from 15:00 to 17:00,

Defendants required Plaintiffs PHOUVIENGSONE SYSOUVONG, a/k/a Tukta

Phouviengsone to do side work on behalf of the restaurant immediately after lunch.

91. From on or about June 5, 2012 to December 31, 2013, Plaintiff PHOUVIENGSONE

SYSOUVONG, a/k/a Tukta Phouviengsone was paid a flat compensation of one thousand

four hundred dollars ($1400) in cash, one (1) week after completion of two (2) weeks of

work.

92. From on or about January 1, 2014 to September 4, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone was paid a flat compensation of one thousand four hundred forty dollars ($1440) in cash every other week, one (1) week after completion of two (2) weeks of work.

93. Defendants owe Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone seven hundred twenty dollars ($720) in unpaid wages for her last week of work.

94. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone and similarly situated employees with Time of Hire Notice in English and in Thai (Plaintiff's primary language) reflecting true rates of pay and payday.

95. Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

96. This non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

97. At all relevant times, Defendants knowingly and failed to provide Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone and similarly situated employees with paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in English and in Thai (Plaintiff's primary language), as required by NYLL §195(1).

98. At all relevant times, Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta

Phouviengsone was not paid spread-of-hours for all days in which she worked over ten (10) hours in a workday.

99. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff PHOUVIENGSONE SYSOUVONG, a/k/a Tukta Phouviengsone worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

100.   Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

## COLLECTIVE ACTION ALLEGATIONS

101.   Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

102.   Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

103.   All said persons, including Plaintiffs, are referred to herein as the "Class."

104.   The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

105.   The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are over forty (40) members in the class.

*Commonality*

106.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a.   Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

      b.   Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

      c.   Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

      d.   Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the

NYLL;

e. Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

g. Whether Defendants provided paystubs detailing full and accurate rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h. At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

107.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime compensation. They were, furthermore, subject to illegal deductions. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

108.   Plaintiffs are able to fairly and adequately protect the interests of the Class and have no

interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are

experienced and competent representing Plaintiffs in both class action and wage and hour

employment litigation cases.

*Superiority*

109.   A class action is superior to other available methods for the fair and efficient adjudication

of the controversy, particularly in the context of wage and hour litigation where individual

Class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expenses that numerous individual

actions engender.  Because the losses, injuries, and damages suffered by each of the

individual Class members are small in the sense pertinent to a class action analysis, the

expenses and burden of individual litigation would make it extremely difficult or impossible

for the individual Class members to redress the wrongs done to them.  Further, important

public interests will be served by addressing the matter as a class action.  The adjudication

of individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in a significant saving

of these costs.  The prosecution of separate actions by individual members of the Class

would create a risk of inconsistent and/or varying adjudications with respect to the

individual members of the Class, establishing incompatible standards of conduct for

Defendants and resulting in the impairment of class members' rights and the disposition of

their interests through actions to which they were not parties.  The issues in this action can

be decided by means of common, class-wide proof. In addition, if appropriate, the Court

can, and is empowered to, fashion methods to efficiently manage this action as a class

action.

110.   Upon information and belief, Defendants and other employers throughout the state

violate the New York Labor Law.  Current employees are often afraid to assert their rights

out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims

because doing so can harm their employment, future employment, and future efforts to

secure employment.  Class actions provide class members who are not named in the

complaint a degree of anonymity which allows for the vindication of their rights while

eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

111.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

112.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory

overtime wage to Plaintiffs, and the similarly situated collective action members, for some or

all of the hours they worked.

113.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall

be liable to the employees affected in the amount of their unpaid minimum compensation, and

in an additional equal amount as liquidated damages.

114.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum

wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of Plaintiff and Rule 23 Class]

115.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

116.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

117.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

118.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

119.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the Plaintiffs and the FLSA Collective]

120.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.    The FLSA provides that no employer engaged in commerce shall employ a covered

employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

122.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

123.   Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

124.   At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

125.   The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

126.   Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

127.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week

when they knew or should have known such was due and that failing to do so would

financially injure Plaintiffs and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiff]

128.   Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully

set forth herein.

129.   An employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to twenty five percent (25%)

before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention

Act, and interest.

130.   At all relevant times, Defendants had a policy and practice of refusing to pay the

overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs

and the class are entitled to.

131.   Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

132.   Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff and Rule 23 Class]

133.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

134.   The NYLL requires employers to pay an extra hour's pay for every day that an employee

works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et

seq.*, and New York State Department of Labor regulations §146-1.6.

135.   Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

### COUNT VI.
### [Violation of New York Labor Law—Record-Keeping Requirements
### Brought on behalf of Plaintiff and Rule 23 Class]

136.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

137.   Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

138.   As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

139.   Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiff's labor.

140.   Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs were not in good faith.

### COUNT VII.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement
### Brought on behalf of Plaintiff and Rule 23 Class]

141.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

142.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

143.   Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their first day of employment.

144.   Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

145.   Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VIII.
### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiffs and Rule 23 Class]

146.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

147.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

148.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

149.   Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover

from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000

for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law.

N.Y. Lab. Law §198(1-d).

### COUNT IX.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiffs]

150.   Plaintiffs re-allege and incorporate and incorporate by reference all preceding paragraphs

as though fully set forth herein.

151.   26 USC §7434 provides that if any person willfully files a fraudulent information return

with respect to payments purported to be made to any other person, such other person may

bring a civil action for damages against the person so filing such a return.

152.   Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from

Defendants, jointly and severally: (1) any actual damages sustained by the plaintiffs as a

proximate result of the filing of the fraudulent information return (including any costs

attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the

action, and (3) in the court's discretion, reasonable attorneys' fees.

### COUNT X.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349 Brought on behalf of the Plaintiff]

153.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

154.   NY General Business Law §349 provides that if any person willfully files a fraudulent

information return with respect to payments purported to be made to any other person, such

other person may bring a civil action for damages against the person so filing such a return.

155.   Due to Defendants' violations of NY GBS Law §349, Plaintiffs are entitled to recover from

Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

156.   Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      Rehiring or reinstatement of the employee to his or her position with restoration of seniority or an award of front pay in lieu of reinstatement under 29 U.S.C. §216 and NYLL §215;

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)      An award of liquidated and/ or punitive damages as a result of Defendants' willful

failure to overtime compensation, and "spread of hours" premium pursuant to New

York Labor Law;

l)      An award of costs and expenses of this action together with reasonable attorneys' and

expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)     The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following the issuance of judgment, or ninety days after expiration of the time to

appeal and no appeal is then pending, whichever is later, the total amount of judgment

shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.

Dated: Flushing, New York
February 2, 2017

TROY LAW, PLLC
*Attorney for the Plaintiff, proposed FLSA*
*Collective and Proposed Class Plaintiffs*

  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com